STATE, *EX REL.* ANDERSON, v. SIMS.

1. *Query.* Can the board of State canvassers be required by *mandamus* to declare an election?
2. No clerk of court could be lawfully elected on November 7th, 1882, as there was no authority for such an election on that day. The statute (*Gen. Stat.* 1882, § 160,) authorized an election for clerk of court only at every alternate general election, reckoning from the year 1880; and if the clerk be a State officer, as has been held, then the constitution required the election to be had at every alternate general election, beginning with the year 1868. *Const., Art. XIV.*, § 10.†

This was an original application to this court made in behalf of Julius H. Anderson, the relator, for a writ of *mandamus* to compel R. M. Sims, the secretary of State, and other members of the board of State canvassers, to declare the relator elected to the office of clerk of court for Horry county, in accordance with the returns in their possession made to them by the board of county canvassers for that county.

*Mr. F. W. McMaster,* for relator.

*Messrs. Youmans,* attorney-general, and *W. W. Sellers,* contra.

---

* This completes the cases of April Term, 1882—REPORTER.
† See post, *Notes of Causes,* No. 1310.

December 2d, 1882. The following order was passed :

PER CURIAM. On hearing the petition and return in the case above stated, it is ordered that the petition be dismissed for reasons which will be stated in an opinion hereafter to be filed.

January 27th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. This is an application to this court, in the exercise of its original jurisdiction, for a *mandamus* to compel the board of State canvassers "to ascertain from the managers' returns and statements forwarded to them by the board of county canvassers of Horry county, that Julius H. Anderson, at the general election held on the said seventh day of November instant, received the highest number of votes for the office of clerk of the court, in said county, and to declare the same and certify such declaration, and none other, to the secretary of State." The board of State canvassers made return, saying "that they declined to canvass any vote for clerk of the Court of Common Pleas for Horry county, at the general election for 1882, in consequence of section 160, of the Revised Statutes of this State. [Edit. 1882.]" That section reads as follows : "There shall be a general election for the election of the following county officers, to wit : judge of probate, county commissioners and school commissioner, held in each county at every general election for members of the house of representatives ; and for the election of sheriff, coroner and clerk of the Court of Common Pleas, at every alternate general election, reckoning from the year one thousand eight hundred and eighty," so that the sole question made by the pleadings is, whether there was any legal authority for holding an election for clerk at the general election held on the seventh day of November, 1882.

Another question was suggested in the argument, and that is, whether the writ of *mandamus*, as prayed for, can be issued to the board of State canvassers. This depends upon the result of an inquiry, whether the duty sought to be enforced is such a ministerial duty as that its performance can be enforced by a writ of *mandamus*, or whether it is judicial. This, however, is a very important question, and inasmuch as it was not raised by

the pleadings, and was not fully argued at the bar, we prefer not to enter upon its consideration at this time. Waiving this question, therefore, for the present, and assuming, for the purposes of this case, that the performance of the duty demanded of the board may be enforced by *mandamus*, we will proceed to inquire whether the relator has stated such a case as would entitle him to the writ of *mandamus* as prayed for.

If there was no law providing for the holding of an election for the clerk of the Court of Common Pleas for Horry county on the day of the general election in 1882, then clearly there was no valid election for that office, and there was no obligation resting upon the board of State canvassers to declare the result of an election held without legal authority; and if they had done so their action would have been unauthorized and a mere nullity, and, of course, a writ of *mandamus* would not be issued to compel the performance of an unauthorized and illegal act. In the absence of any provision in the constitution designating the time for holding the election for clerk, the General Assembly could fix the time; and this they have undertaken to do by section 160 of the General Statutes of 1882 above quoted, to wit: " At every alternate general election, reckoning from the year one thousand eight hundred and eighty."

This necessarily fixes the day of the general election in 1884, and not the day for the general election in 1882, as the time for holding the election for clerk. In fact there is no act of the General Assembly, so far as we are informed, and none such has been cited to us, designating the day of the general election in 1882, as the day for holding an election for clerk in the county of Horry, and hence, in the absence of such an act, there was no more authority for holding an election for that office on the 7th day of November, 1882, than there would have been for holding an election on any other day that might have been suggested.

But, in addition to this, it appears to us that the constitution does fix a day for holding all such elections. Article II., section 11, as amended, is in the following language: " The first election for senators and representatives, under the provisions of this constitution, shall be held on the 14th, 15th and 16th days of April, of the present year [1868], and the second election

shall be held on the third Wednesday in October, 1870; and forever thereafter on the first Tuesday following the first Monday in November, every second year, in such manner and in such place as the legislature may provide." And in article XIV., section 10, it is provided that: " The election for all State officers shall take place at the same time as is provided for that of members of the General Assembly, and the election for those officers whose terms of service are for four years, shall be held at the time of each alternate general election." If, therefore, the clerk of the Court of Common Pleas is a State officer, as has been held by this court in the case of *Williman* v. *Ostendorff,* MS. decision filed February 12th, 1877, then it follows that the election for clerk is required by the constitution to be held at each alternate general election, for he is one of the officers whose term of service is four years, (*Const. Art.* IV, § 27,) and inasmuch as the first general election under the present constitution was held in 1868, all subsequent elections for clerk were required to be held at each alternate general election, reckoning from 1868, to wit: at the general elections in 1872, 1876 and 1880, and, consequently, the next election for clerk cannot be held until the day fixed for the general election in 1884. Thus it appears that section 160 of the General Statutes of 1882, prescribing the day of the general election in 1884, as the time for holding the election for clerk, is not only not in conflict with constitution, as was argued in this case, but is in direct conformity thereto.

We are therefore of opinion that there was no legal authority for holding an election for clerk of the Court of Common Pleas for Horry county on the seventh day of November, 1882, and hence that the board of State canvassers could not have been required to declare the result of an election held without such authority. The judgment of this court, in conformity with these views dismissing the petition, has heretofore been rendered.